**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>EDUCATION MANAGEMENT II LLC,<br><br>Debtor. | Chapter 7<br><br>Case No. 18-11494 (LSS)<br><br>**Related D.I. 163** |
| In re:<br><br>EDUCATION FINANCE III LLC,<br><br>Debtor. | Chapter 7<br><br>Case No. 18-11499 (LSS)<br><br>**Related D.I. 10** |
| In re:<br><br>EDUCATION MANAGEMENT CORPORATION,<br><br>Debtor. | Chapter 7<br><br>Case No. 18-11500 (LSS)<br><br>**Related D.I. 15** |
| In re:<br><br>EDUCATION MANAGEMENT HOLDINGS II LLC,<br><br>Debtor. | Chapter 7<br><br>Case No. 18-11501 (LSS) |
| In re:<br><br>HIGHER EDUCATION SERVICES II LLC,<br><br>Debtor. | Chapter 7<br><br>Case No. 18-11503 (LSS)<br><br>**Related D.I. 12** |
| In re:<br><br>THE ART INSTITUTES INTERNATIONAL II LLC,<br><br>Debtor. | Chapter 7<br><br>Case No. 18-11546 (LSS)<br><br>**Related D.I. 12** |

**OMNIBUS RESPONSE OF U.S. BANK, NATIONAL ASSOCIATION, TO THE OBJECTIONS OF GEORGE L. MILLER, INTERIM CHAPTER 7 TRUSTEE, TO PROOFS OF CLAIM FILED BY U.S. BANK, NATIONAL ASSOCIATION, IN THE ABOVE-CAPTIONED DEBTORS' CASES**

U.S. Bank, National Association ("U.S. Bank"), as administrative agent under that certain Credit and Guaranty Agreement, dated as of January 5, 2015 (as amended, restated, supplemented or otherwise modified from time to time, and including any and all annexes, exhibits and schedules thereto, collectively, the "Credit Agreement"),[1] by and through its undersigned counsel, hereby files this omnibus response (this "Response") to the objections (the "Objections") filed by George L. Miller, as interim chapter 7 trustee (the "Interim Trustee"), to the proofs of claim filed by U.S. Bank (each, a "Proof of Claim" and collectively, the "Proofs of Claim")[2] against each of the above-captioned debtors (the "Credit Party Debtors" and, together with their affiliated debtors, the "Debtors"). In support of this Response, U.S. Bank respectfully represents as follows:

**PRELIMINARY STATEMENT**

1. On August 2, 2018, U.S. Bank, acting as administrative agent on behalf of itself and a lender syndicate, filed a Proof of Claim against each of the Credit Party Debtors on account of joint and several Obligations owing under the Credit Agreement (each a "Proof of Claim" and collectively, the "Proofs of Claim"). Each Proof of Claim asserted (a) a liquidated unsecured deficiency claim in the amount of $599,466,708.37,[3] (b) a general unsecured claim for

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Credit Agreement and, if not defined therein, in the Objections (as defined herein).

[2] A chart identifying each of the Proofs of Claim filed by U.S. Bank is attached hereto as **Exhibit A**.

[3] The amounts in the Proofs of Claim for the liquidated unsecured claim and secured claim were understated and overstated by $1,860, respectively, by inadvertently including the assets of American Education Centers (which is not a Credit Party Debtor) in the calculation of collateral

2

unliquidated amounts owing under the Credit Agreement (*e.g.*, accrued and accruing unpaid interest, fees, costs, and expenses), and (c) a secured claim solely to the extent of the value of the Collateral, which is valued at 307,078.42 in the Debtors' schedules.  After filing the Proofs of Claim, U.S. Bank informed the Office of the United States Trustee that it intended to seek to elect a replacement chapter 7 trustee at the Credit Party Debtors' Section 341 meetings, which were scheduled for the following day.

2.    The next morning, less than an hour before the Section 341 meetings were scheduled to commence, the Interim Trustee filed the instant substantive Objections to each of the Proofs of Claims.[4]  In the Objections, the Interim Trustee argued, without any basis in fact or applicable law, that U.S. Bank's claims should "be denied in their entirety."  Later that day, at the Section 341 meetings, the Interim Trustee relied on the filing of its Objections, and the arguments set forth therein, in objecting to U.S. Bank's ability to vote for a replacement chapter 7 trustee in the Credit Party Debtors' cases.  A motion for resolution of the contested trustee election for each of the Credit Party Debtors will be filed by U.S. Bank.

3.    The Interim Trustee's Objections should be overruled.  As an initial matter, the Interim Trustee does not dispute the fact that the Credit Parties incurred approximately $600 million in funded debt obligations under the Credit Agreement or that, for more than three years, the facilities available under the Credit Agreement have been the Credit Parties' primary source of liquidity.  The Interim Trustee likewise does not dispute the validity of the Credit Documents or offer any defenses to the Obligations incurred thereunder.  While acknowledging that U.S. Bank asserted a "partially secured, partially unsecured claim", the Interim Trustee, in virtually

---

[4] The Objections were not supported by affidavits or declarations stating that the Proofs of Claim do not provide *prima facie* evidence of the validity and amount of U.S. Bank's claims.  Accordingly, the Objections must be deemed to be made on a substantive basis in accordance with rule 3007-1(d)(vi) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

summary form, argues that the Proofs of Claim were not properly filed, and must be expunged "in their entirety," because (a) the Proofs of Claim allegedly assert only a contingent, unliquidated claim, (b) the Proofs of Claim purportedly fail to set forth how the foreclosure that preceded the Credit Party Debtors' chapter 11 cases was accounted for, (c) the Interim Trustee has not had an opportunity to determine the validity and enforceability of U.S. Bank's liens, and (d) U.S. Bank has asserted an insignificant portion of its claims in an unliquidated amount. *See* Objection ¶ 13, 14, 15. These arguments are based on a clear and obvious mischaracterization of the Proofs of Claim, the information U.S. Bank provided the Interim Trustee well in advance of the filing of the Objections, and applicable law. Therefore, the Objections should be overruled.

4. U.S. Bank prepared the Proofs of Claim in accordance with Bankruptcy Rule 3001 and in conformity with Official Form 410. Each Proof of Claim has been signed by a representative of U.S. Bank under penalty of perjury and filed with the Court. Among other things, the Proofs of Claim identify the Credit Agreement, set forth the identities of the parties thereto, the amount and nature of the obligations incurred under the Credit Agreement (including a liquidated claim of nearly $600 million), the nature and estimated amount of the Collateral, and contact information for U.S. Bank and its counsel.[5] Accordingly, the Proofs of Claim constitute *prima facie* evidence of the validity and amount of U.S. Bank's claims.

5. The burden has now shifted to the Interim Trustee to produce evidence that refutes U.S. Bank's claims. The Interim Trustee has not put forth any evidence (and indeed admits as much)[6] and, therefore, the Objections should be overruled.

---

[5] Copies of the Credit Agreement and other Credit Documents as well as the Partial Strict Foreclosure Agreement were provided to the Interim Trustee by U.S. Bank prior to the filing of the Proofs of Claim.

[6] The Interim Trustee "has not had an opportunity to determine whether U.S. Bank's . . . liens are valid and enforceable. Accordingly, it is impossible for the Trustee to determine at this juncture what amounts of the Claims, if any, are secured, and in turn what amounts are unsecured." Objection ¶ 14,

6. In reality, the Interim Trustee filed the Objections in a blatant and frivolous attempt to disqualify U.S. Bank, the true party in interest in these cases, from selecting an estate fiduciary of its choosing in the Credit Party Debtors' chapter 11 cases as the Bankruptcy Code permits. The Court should not further entertain such tactics.

## BACKGROUND

### A.   General Background.

7. On or about January 5, 2015, each of the Credit Party Debtors and certain of their non-debtor affiliates entered into the Credit Agreement, the Pledge and Security Agreement, and each of the other Credit Documents. U.S. Bank serves as the Administrative Agent and the Collateral Agent under the Credit Agreement and the Pledge and Security Agreement.

8. Pursuant to the Credit Agreement, the Lenders agreed to provide Education Management II LLC with up to $149,999,999.12 in Tranche A Term Loans, up to $249,999,999.04 in Tranche B Term Loans, and up to $256,440,700.96 in Revolving Loans (collectively, the "Loans"). In exchange, each of the Credit Parties, including each of the Credit Party Debtors, jointly and severally, absolutely, unconditionally, and irrevocably guaranteed all Obligations owing under the Credit Agreement, including the Loans. As further consideration, certain of the Credit Parties, including each of the Credit Party Debtors, also agreed to grant U.S. Bank, as Collateral Agent, a first priority security interest in and continuing lien on all of their right, title, and interest to and under all of the Collateral.

9. On June 25, 2018, pursuant to Section 9-620 of the Uniform Commercial Code and the Credit Documents, the Credit Parties, including each of the Credit Party Debtors, and U.S. Bank entered into that certain Surrender of Collateral, Consent to Partial Strict Foreclosure, and Release Agreement (the "Partial Strict Foreclosure Agreement"), pursuant to which U.S.

Bank foreclosed upon, and took title to and possession of, all of the Credit Party Debtors' possession, right, title and interest in and to the Surrendered Collateral (as defined in the Partial Strict Foreclosure Agreement) in satisfaction of $13,000,000.00 of Obligations under the Credit Agreement. To date, the amount of cash collected by U.S. Bank after entry into the Partial Strict Foreclosure Agreement is less than $835,000.

**B.     The Chapter 7 Cases & Interim Trustee.**

10.     On June 29, 2018, each of the Debtors commenced a chapter 7 case by filing a voluntary petition for relief under chapter 7 of the Bankruptcy Code. George L. Miller was appointed as the Interim Trustee for each of the Debtors by the Office of the United States Trustee.

11.     On July 3, 2018, each of the Debtors filed its Schedules of Assets and Liabilities and Statements of Financial Affairs (the "Schedules and Statements").

12.     On July 30, 2018, U.S. Bank provided the Interim Trustee with electronic access to copies of the Credit Agreement, the Pledge and Security Agreement, the Partial Strict Foreclosure Agreement, and certain other material documents related thereto.

**C.     The Proofs of Claim.**[7]

13.     On August 2, 2018, U.S. Bank filed a Proof of Claim against each of the Credit Party Debtors. The Proofs of Claim include all Obligations of every nature arising under the Credit Documents, including, but not limited to, all advances to, and debts, liabilities, obligations, covenants, and duties of, each of Credit Party Debtor arising under any Credit Document or otherwise, with respect to any Priority Loan, all Letter of Credit Obligations, any Tranche B Term Loan, any Swap Agreement, and the Cash Management Obligations. As set

---

[7] The description of any Proof of Claim set forth in this Response is qualified in its entirety by the Proof of Claim. Except as set forth in note 3 above, in the event of a conflict between this Response and any Proof of Claim, the Proof of Claim shall control.

forth in further detail in the Proofs of Claim, as of the Petition Date, each Credit Party Debtor was and still is liable to U.S. Bank on account of the Obligations, including the following: (a) the aggregate outstanding principal amount of $566,890,806.20 (which amount, as the Credit Party Debtors' books and records should reflect, is net of the $13,000,000 of Obligations that were satisfied pursuant to the Partial Strict Foreclosure Agreement); (b) accrued and unpaid interest in the aggregate amount of not less than $31,919,878.40, which amount continues to accrue; (c) unpaid fees in the aggregate amount of not less than $963,102.19; (d) reimbursement of costs and expenses, which continue to be incurred; (e) indemnification obligations in an as yet undetermined amount; and (f) any other obligations owed from time to time by the Credit Party Debtors under the Credit Documents. *See* Addendum to Proofs of Claim ¶ 5.

14. As set forth in the Credit Party Debtors' Schedules and Statements, after setting aside all tax attributes, the value of the Debtors' remaining assets (and the Collateral) is $307,078.42 in the aggregate. Accordingly, the value of U.S. Bank's secured claim is $307,078.42 (*i.e.*, the value of the Collateral based on the Debtors' own books and records) and the value of its unsecured liquidated deficiency claim is $599,466,708.37 (which is equal to the liquidated portion of U.S. Bank's claim minus the value of the Collateral).[8]

15. On August 3, 2018, the Interim Trustee filed the *Objection of George L. Miller, Chapter 7 Trustee, to Proofs of Claim Filed By U.S. Bank, National Association as Administrative Agent on Behalf of Itself and Each Secured Claimant in the Above-Captioned Debtors' Cases* [Docket No. 163].

16. On August 9, 2018, the United States Trustee filed its *Report of Disputed Election of Chapter 7 Trustee Submitted By United States Trustee* [Docket No. 167], in which it reported,

---

[8] U.S. Bank reserves all rights with respect to the value of its secured claim.

among other things, that U.S. Bank made a request for an election at the 341 Meetings which remains disputed.

**RESPONSE**

17. Under the standard established by the Third Circuit in *In re Allegheny Intern., Inc.*, 954 F.2d 167 (3d Cir.1992), the burden of proof for claims filed under the Bankruptcy Code "rests on different parties at different times." *Id*. at 173. The initial burden is on the claimant to allege sufficient facts to support the claim. *Id*. The burden of going forward then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim. *Id*. The objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. *Id*. at 173-74. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. *Id*. at 174.

18. U.S. Bank's initial burden of proof is "a relatively low threshold." *See In re F-Squared Inv. Mgmt., LLC*, 546 B.R. 538, 544 (Bankr. D. Del. 2016). So long as its proof of claim satisfies the requirements of Bankruptcy Rule 3001, the allegations in the proof of claim are treated as "*prima facie* evidence of the validity and amount of the claims." *Id*. at 543; *see also* Fed. R. Bankr. P. 3001(f). To satisfy Bankruptcy Rule 3001, a proof of claim "must be in writing," "conform substantially to the Official Form," and be signed by the claimant "under penalty of perjury." *Id*. "Multiple courts and commentators also require that a proof of claim 'allege facts sufficient to support the claim.'" *Id*. "In determining whether a proof of claim contains sufficient allegations, a reviewing court will assume the allegations are true and ask whether the facts establish the necessary elements of a claim." *Id*. at 543-44.

19. Here, U.S. Bank has unquestionably satisfied its initial burden of proof. Bankruptcy Rule 3001 is satisfied because, among other things, each Proof of Claim is in writing, conforms substantially to Official Form 410, and has been signed by a representative of U.S. Bank under penalty of perjury. Likewise, each Proof of Claim alleges facts sufficient to establish the necessary elements of U.S. Bank's claims. As set forth in further detail herein and in the Proofs of Claim, among other things, U.S. Bank asserts a liquidated claim in excess of $599 million for Obligations arising under the Credit Documents, alleges an unliquidated claim for Obligations that continue to accrue (*e.g.*, interest, fees, costs and expenses), asserts that U.S. Bank's claims are secured to the extent of the value of the Collateral (which is immaterial) and asserts that, to the extent any claim exceeds the value of the Collateral, it has an unsecured deficiency claim.

20. Accordingly, under the *Allegheny* framework, the Interim Trustee now bears the burden of producing "actual evidence" sufficient to negate U.S. Bank's claims. *See id.* at 544. The evidence must "refute at least one of the allegations that is essential to the claim's legal sufficiency." *Allegheny*, 954 F.2d at 173-74. "[M]ere allegations, unsupported by evidence, are insufficient." *F-Squared Inv.*, 546 B.R. at 544. If the Interim Trustee "fails to meet its burden of production, its objection should be dismissed." *Id.*

21. The Interim Trustee has failed to carry his burden of production. The Interim Trustee has not provided any evidence in support of his Objection, let alone evidence sufficient to refute U.S. Bank's factual allegations. For example, the Interim Trustee does not dispute the authenticity or accuracy of any of the Credit Documents, including the Credit Agreement or the Pledge and Security Agreement, allege any defense to the obligations of the Credit Party Debtors

9

under any of the Credit Documents, or challenge the fact that, pursuant to the Credit Documents, the Credit Party Debtors actually incurred nearly $600 million in funded debt obligations.

22.     Instead, the Interim Trustee relies on incorrect factual allegations and mischaracterizations of applicable law.  The Interim Trustee characterizes U.S. Bank's claims as "unsubstantiated," notwithstanding the fact that U.S. Bank provided the Interim Trustee with over 850 pages of Credit Documents, prior to filing the Proofs of Claim.  The Interim Trustee conclusorily describes U.S. Bank's claims as "unliquidated," while ignoring the fact that each Proof of Claim clearly sets forth a substantial liquidated amount.  *See* Proof of Claim ¶¶ 5, 9.  The Interim Trustee mischaracterizes existing law by suggesting that a proof of claim is subject to disallowance in its entirety *simply because a portion of the claim is asserted in an unliquidated amount*.  *See* Objection ¶ 15.  The Interim Trustee appears to suggest, again without any legal basis, that a proof of claim is subject to disallowance in its entirety because the Interim Trustee "has not had an opportunity to determine whether U.S. Bank's . . . liens are valid and enforceable."  *See* Objection ¶ 14.[9]  These arguments and gross mischaracterizations by the Interim Trustee do not come even close to satisfying the Interim Trustee's burden of proof to sustain its substantive Objections.  None of the arguments raised by the Interim Trustee would invalidate the nearly $600 million in claims asserted in the Proofs of Claim.  Therefore, the Objections should be overruled.

23.     Finally, even if the allegations in the Objections were sufficient to satisfy the Interim Trustee's burden, which they are not, U.S. Bank has demonstrated the validity of its claims by the preponderance of the evidence.  To establish a claim by a preponderance of the evidence means "to prove that something is more likely so than not so."  *In re LightSquared Inc.*,

---

[9] Notably, even if the Interim Trustee were to find some basis to oppose the validity of U.S. Bank's liens, it would not impact the validity of the claim itself.

511 B.R. 253, 314 n.40 (Bankr. S.D.N.Y. 2014) (citation omitted).  Each Proof of Claim was signed by a representative of U.S. Bank under penalty of perjury.  U.S. Bank has provided the Interim Trustee, and has offered to provide any other party in interest, with true and correct copies of each of the Credit Documents, including original signatures thereto.  More importantly, it is impossible to dispute that, since January 2015, the borrowings available under the Credit Agreement have been the Credit Party Debtors' primary source of liquidity.  There can be no serious argument that U.S. Bank has not established the validity of its claims by a preponderance of the evidence.[10]

---

[10] U.S. Bank reserves the right to object to any fees or expenses incurred by the Interim Trustee or its counsel in connection with preparing, filing, or litigating the Objection as well as all rights under Bankruptcy Rule 9011.

**CONCLUSION**

24. The substantive Objections contain no actual evidence and are unsupported by applicable law. The Proofs of Claim, which were filed by U.S. Bank on behalf of itself and a lender syndicate, represent nearly $600 million in liquidated funded debt obligations and clearly satisfy all applicable burdens of proof. The Objections appear to have been filed solely for the improper purpose of disqualifying U.S. Bank from selecting the trustee of its choosing as permitted by Section 702 of the Bankruptcy Code. Accordingly, the Objections should be overruled.

Dated: August 16, 2018
      Wilmington, Delaware

*/s/ Mark L. Desgrosseilliers*
Mark L. Desgrosseilliers (Del. Bar No. 4083)
Womble Bond Dickinson (US) LLP
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
Email: mark.desgrosseilliers@wbd-us.com

-and-

Carey D. Schreiber, Esq.
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
Email: cschreiber@winston.com

*Counsel to U.S. Bank, N.A.*