# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Education Management Corporation<br><br>Debtor. | Chapter 7<br><br>Case No. 18-11500 (LSS)<br><br>**Hearing Date: November 29, 2018 at 10:00 a.m. (ET)**<br>**Obj. Deadline: November 26, 2018 at 4:00 p.m. (ET)** |
| In re:<br><br>Education Management LLC<br><br>Debtor. | Chapter 7<br><br>Case No. 18-11502 (LSS)<br><br>**Hearing Date: November 29, 2018 at 10:00 a.m. (ET)**<br>**Obj. Deadline: November 26, 2018 at 4:00 p.m. (ET)** |
| In re:<br><br>Education Management Holdings II LLC<br><br>Debtor. | Chapter 7<br><br>Case No. 18-11501 (LSS)<br><br>**Hearing Date: November 29, 2018 at 10:00 a.m. (ET)**<br>**Obj. Deadline: November 26, 2018 at 4:00 p.m. (ET)** |
| In re:<br><br>Education Management II LLC<br><br>Debtor. | Chapter 7<br><br>Case No. 18-11494 (LSS)<br><br>**Hearing Date: November 29, 2018 at 10:00 a.m. (ET)**<br>**Obj. Deadline: November 26, 2018 at 4:00 p.m. (ET)** |

**MOTION OF CERTAIN FORMER DIRECTORS AND/OR OFFICERS FOR RELIEF FROM THE AUTOMATIC STAY, TO THE EXTENT APPLICABLE, TO ALLOW PAYMENT AND/OR ADVANCEMENT OF DEFENSE COSTS AND OTHER LOSSES UNDER DIRECTORS AND OFFICERS INSURANCE POLICY**

Edward H. West, John M. Mazzoni and Todd S. Nelson, as former directors and/or officers (collectively, the "Directors and/or Officers") of debtors Education Management Corporation ("EDMC"), Education Management LLC, Education Management Holdings II LLC, and/or Education Management II LLC (collectively, with EDMC, the "Debtors"), by and through

their undersigned counsel, file this motion (this "Motion"), pursuant to sections 105(a) and 362(d) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 4001-1 of the Local Rules of Bankruptcy Practice and Procedure in the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for the entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), confirming that the automatic stay does not apply to the proceeds of a certain directors and officers liability insurance policy, or, in the alternative, granting immediate relief from the automatic stay so that the Directors and/or Officers may receive payments, advances, and/or reimbursements of their defense costs and other expenses, consistent with their rights under the policy. In support of this Motion, the Directors and/or Officers respectfully represent as follows:

## PRELIMINARY STATEMENT[1]

1.    The Directors and/or Officers seek access to the proceeds of the USSIC Policy, which provides coverage for losses, including defense costs, that the Directors and/or Officers have incurred, and will continue to incur, in connection with defending against allegations raised in a pending lawsuit, *Ortiz, et al. v. Education Management Corporation, et al.*, Case No. 1:18-cv-04623-KPF filed in the United States District Court for the Southern District of New York (the "Lawsuit"), that relate to their service as former directors and/or officers of the Debtors. The policy was issued to EDMC in order to protect the Directors and/or Officers against such claims. In light of the Debtors' bankruptcy petitions and the automatic stay, USSIC has requested that the Directors and/or Officers obtain an order from this Court (i) confirming that

---

[1] Capitalized terms in this Preliminary Statement shall have the respective meanings ascribed to them in the body of this Motion.

2

the proceeds of the USSIC Policy are not subject to the automatic stay or, in the alternative, (ii) granting relief from the automatic stay. This relief should be granted.

2. *First*, the proceeds of the USSIC Policy are not property of the Debtors' estates, and as a result, the automatic stay does not prevent the Directors and/or Officers access to these proceeds. Pursuant to the express and unambiguous terms of the USSIC Policy, coverage of claims against the Debtors (including Securities Claims) is subordinated to the coverage of claims against the Directors and/or Officers. In a case with materially similar coverage and order of payment provisions, this Court held that the proceeds of a directors and officers insurance policy were not property of a corporate debtor's estate subject to the automatic stay. *See In re Downey Fin. Corp.*, 428 B.R. 595, 604-08 (Bankr. D. Del. 2010). A contrary holding would contravene the established principle that bankruptcy should not confer upon a debtor "greater rights in [insurance policy proceeds] than the debtor had before filing for bankruptcy." *Id.* at 608 (internal quotation marks and citations omitted).

3. *Second*, in the alternative, this Court should grant relief from the automatic stay to allow the Directors and/or Officers access to the USSIC Policy proceeds, consistent with the terms of the policy. Absent relief from the stay (or an order confirming that the stay does not apply), the Directors and/or Officers are at risk of harm because they rely on the proceeds of the USSIC Policy to pay for their legal expenses and related costs in connection with the Lawsuit, and it would be inequitable to allow the automatic stay to frustrate the ability of directors and officers to fund their legal expenses. By contrast, the Debtors will not suffer any prejudice from granting the requested stay relief because any interest that they might have in the proceeds of the USSIC Policy is subordinated and subject to that of the Directors and/or Officers. Because the

balance of hardships weighs decisively in the Directors' and/or Officers' favor, relief from the stay is warranted, to the extent applicable.

## JURISDICTION

4.     The Court has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334(b) and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. § 1409.

## BACKGROUND

5.     On June 29, 2018 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

**A.     The USSIC Policy**

6.     Prior to the Petition Date, U.S. Specialty Insurance Company ("USSIC") issued to EDMC the *Directors, Officers and Corporate Liability Insurance Policy* No. 24-MGU-13-A30339 (the "USSIC Policy").[2] As described in more detail below, the USSIC Policy is a "claims made" policy that provides for the following Insuring Agreements:

> a. **Insuring Agreement (A)** provides that "[USSIC] will pay to or on behalf of the Insured Persons[3] Loss[4] arising from Claims[5] first made during the

---

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the USSIC Policy. A copy of the USSIC Policy has been provided to counsel to the chapter 7 trustee of the Debtors.

[3] "Insured Persons" include any "past, present or future director, officer, managing member or manager of the Company . . ." such as the Directors and/or Officers. *See id.* at Definition (F), as amended by Endorsement No. 10.

[4] "Loss" includes "Defense Costs," which in turn is defined to include "reasonable fees, costs and expenses consented to by the Insurer . . . resulting from the investigation, adjustment, defense or appeal of a Claim against an Insured Person . . . ." *See id.* at Definitions (G) and (D).

[5] "Claim" includes, among other things, a civil proceeding commenced by service of a complaint or similar pleading. *See id.* at Definition (B).

Policy Period or Discovery Period (if applicable), against the Insured Persons for Wrongful Acts,[6] except when and to the extent that the Company[7] has paid such Loss to or on behalf of the Insured Persons as indemnification or advancement.

b. **Insuring Agreement (B)(1)** provides that "[USSIC] will pay to or on behalf of the Company Loss arising from Claims first made during the Policy Period or Discovery Period (if applicable) against the Insured Persons for Wrongful Acts, if the Company has paid such Loss to or on behalf of the Insured Persons as indemnification or advancement . . . ."

c. **Insuring Agreement (B)(2)** provides that "[USSIC] will pay to or on behalf of the Company Loss arising from Securities Claims[8] first made during the Policy Period or the Discovery Period (if applicable) against the Company for Wrongful Acts."

*USSIC Policy*, Insuring Agreements (A)-(B)(1), (2).

7.     The coverage that the USSIC Policy provides to the Company is subordinated to the coverage the USSIC Policy provides to Insured Persons such as the Directors and/or Officers. Specifically, the "Order of Payments" Endorsement to the USSIC Policy provides that payments on behalf of Insured Persons under Insuring Agreement (A) shall be made before any other payments under the USSIC Policy:

> If the Insurer is obligated to pay Loss, including Defense Costs, under more than one INSURING AGREEMENT, whether in connection with a single Claim or multiple Claims, the Insurer will first pay any Loss payable under INSURING AGREEMENT (A) and, if the Insurer concludes that the amount of all Loss, including Defense Costs, is likely to exceed the Insurer's Limit of Liability, the Insurer shall be entitled to withhold some or all of any Loss

---

[6] "Wrongful Act" includes, among other things, any "(1) actual or alleged act, error, misstatement, misleading statement, neglect, omission or breach of duty (a) by an Insured Person in his or her capacity as such . . . or (2) matter claimed against an Insured Person by reason of his or her service in such capacity . . . ." *See id.* at Definition (P), as amended by Endorsement No. 8.

[7] "Company" means EDMC and its Subsidiaries. *See id.* at Definition (C), as amended by Endorsement No. 36.

[8] Pursuant to the USSIC Policy, "Securities Claim" means "a Claim which (1) is brought by or on behalf of one or more securities holders of the company in their capacity as such, including a derivative action brought to enforce a right of the Company, (2) arises from the purchase or sale of, or offer to purchase or sell, any securities issued by the Company, whether such purchase, sale or offer involves a transaction with the Company or occurs in the open market, or (3) alleges a violation of law in connection with the registration, purchase, sale or offer of securities issued by the Company . . . ." *Id.* at Definition (N), as amended by Endorsement No. 14.

5

> payable under INSURING AGREEMENT (B)(1) or (B)(2) to ensure that as much of the Limit of Liability as possible is available for the payment of Loss under INSURING AGREEMENT (A). If no Loss is payable under INSURING AGREEMENT (A), or if the Insurer's obligations under INSURING AGREEMENT (A) have been satisfied, then, subject to the Insurer's Limit of Liability as set forth in Item 3 of the Declarations, the Insurer will pay such Loss as it is required to pay under INSURING AGREEMENT (B)(1) or (B)(2) in such manner and, in the event of multiple Claims, apportioned among such Claims, as the Named Corporation's Chief Executive Officer shall direct in writing.

*Id.* at Endorsement No. 28.

8. Accordingly, to the extent the Debtors have any interests in the USSIC Policy proceeds pursuant to Insuring Agreement (B)(1) or (B)(2), such interests are entirely secondary and subordinated to the interests of the Directors and/or Officers in the policy proceeds under Insuring Agreement (A).

**B.     The Lawsuit**

9. On May 24, 2018, a group of former students (the "AINY Students") at non-debtor affiliate The Art Institute of New York City ("AINY") filed the Lawsuit against the Directors and/or Officers, EDMC, and AINY alleging, *inter alia*, that the defendants negligently and fraudulently induced the AINY Students to enroll in AINY.

10. On July 2, 2018, EDMC filed a Suggestion of Bankruptcy in the Lawsuit, however, the Lawsuit continues with respect to the Directors and/or Officers. The Directors and/or Officers have incurred, and expect to continue to incur, legal fees and costs as a result of the Lawsuit.

11. The Directors and/or Officers have sought coverage from USSIC for Defense Costs under the USSIC Policy. USSIC has agreed to pay certain Defense Costs under a

reservation of rights, but has conditioned its willingness to do so on the issuance of an order confirming that the automatic stay does not prohibit such payments.

## RELIEF REQUESTED

12. By this Motion, the Directors and/or Officers seek entry of the Proposed Order (i) confirming that the proceeds of the USSIC Policy[9] are not property of the estate subject to the automatic stay or, in the alternative, (ii) granting relief from the automatic stay to allow USSIC to make payments or advancements of defense costs or other losses to the Directors and/or Officers, consistent with the terms and conditions of the USSIC Policy.

## BASIS FOR RELIEF REQUESTED

13. The Court has broad discretion to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." *See* 11 U.S.C. § 105(a). The Directors and/or Officers submit that entry of the Proposed Order is necessary and appropriate to carry out the provisions of the Bankruptcy Code because USSIC has conditioned its further payments of proceeds to the Directors and/or Officers on entry of the order. And, as discussed below, the automatic stay does not prohibit USSIC from providing coverage to the Directors and/or Officers in accordance with the USSIC Policy because the proceeds available under Insuring Agreement (A) are not property of the estates and, in any event, the Directors' and/or Officers' rights thereto are superior to the Debtors' rights in the policy's proceeds. Nevertheless, to the extent the automatic stay could be interpreted to prohibit USSIC from providing coverage to the Directors and/or Officers, the Court should grant limited relief from the stay to permit the enforcement of the USSIC Policy according to its terms.

---

[9] The Directors and/or Officers reserve all of their rights with respect to any policies potentially applicable to cover defense costs and other losses that are not addressed in this Motion.

A. **The Automatic Stay Does Not Apply to Proceeds Payable to the Directors and/or Officers from the USSIC Policy Because Those Proceeds Are Not Estate Property**

14. When determining whether policy proceeds are property of the estate, courts are guided by the language and scope of the policy at issue. *See In re Allied Digital Techs. Corp.*, 306 B.R. 505, 509 (Bankr. D. Del. 2004). The prevailing view in this district and others is that, if a policy provides direct coverage to directors and officers that is superior to that of the debtor, then the policy proceeds are *not* property of the estate. *See, e.g., Downey*, 428 B.R. at 608; *In re World Health Alternatives, Inc.*, 369 B.R. 805, 811 (Bankr. D. Del. 2007); *Allied Digital Techs.*, 306 B.R. at 510. This principle is particularly appropriate if the policy (like the USSIC Policy) contains an order of payment provisions that expressly subordinates a debtor's rights to policy proceeds to those of the debtor's directors and officers, and effectively allows the directors and officers to exhaust the policy's coverage. *See, e.g., World Health Alternatives*, 369 B.R. at 808 (finding that order of payment provision rendered subordinated coverage for debtor so remote that it was not reasonably probable that trustee would succeed on merits asserting that proceeds of policy were property of estate, in that "Trustee is no different than any third party plaintiff suing defendants covered by a wasting Policy"); *In re TierOne Corp.*, 2012 WL 4513554, at *3 (Bankr. D. Neb. Oct. 2, 2013) (finding that, "[t]he directors and officers have a right to make claims under the policies and to receive payment of the policy proceeds to the exclusion of the bankruptcy estate since they are the insureds who are first in line," and therefore, proceeds of the directors and officers policy were not property of estate).

15. Under the language of the USSIC Policy and the facts present here, the USSIC Policy proceeds payable to the Directors and/or Officers are not property of the Debtors' estates for several reasons. First, the Directors and/or Officers are entitled to coverage under Insuring Agreement (A), which provides direct coverage only to Insured Persons, not the Debtors.

Furthermore, the Order of Payments Endorsement expressly provides that payments to the Directors and/or Officers under Insuring Agreement (A) shall be made before any other payments under Insuring Agreements (B)(1) and (B)(2) of the USSIC Policy, thereby unambiguously subordinating the Debtors' rights in such proceeds. Accordingly, Insurance Agreement (A) proceeds plainly do not constitute property of the Debtors' estates. *See Downey*, 428 B.R. at 602 ("When a [corporate] debtor's liability insurance policy only provides direct coverage to the directors and officers, courts generally hold that the proceeds are not property of the estate."); *see also In re Matter of Vitek, Inc.*, 51 F.3d 530, 533 (5th Cir. 1995) ("[W]hen a debtor corporation owns a liability policy that exclusively covers its directors and officers, . . . the proceeds of that D&O policy are not part of the debtor's bankruptcy estate.").

16. Second, the potential for coverage to the Debtors under Insuring Agreement (B)(1) does not alter this conclusion because the Debtors are highly unlikely to indemnify the Directors and/or Officers. Insuring Agreement (B)(1) applies only to the extent of any indemnification or advancement the Debtors actually paid on behalf of the Insured Persons for losses on a covered claim. In several cases, this Court has made clear that indemnification coverage does not constitute property of the estate where indemnification is "hypothetical or speculative" and thus, "is no longer protecting the estate's other assets from diminution." *Downey*, 428 B.R. at 607; *see also World Health Alternatives*, 369 B.R. 810 (noting that courts "have found that insurance policy proceeds are not property of the estate where a debtor is covered for indemnification, but indemnification 'either has not occurred, is hypothetical, or speculative'") (*quoting Allied Digital Techs.*, 306 B.R. at 512)).

17. Here, the likelihood that the Debtors will indemnify the Directors and/or Officers or any other Insured Person is extremely remote. The Directors and/or Officers understand that

9

the Debtors have not sought such coverage under Insuring Agreement (B)(1). Moreover, the Debtors have not given any indication to the Directors and/or Officers that they have the intention to advance the Directors' and/or Officers' defense costs (or otherwise indemnify them) going forward, and they do not appear to have the financial wherewithal to do so. *See In re Educ. Mgmt. Corp.*, Case No. 18-11500 (LSS) (Bankr. D. Del. Oct. 25, 2018) [Docket No. 64] (order approving stipulation between chapter 7 trustee and U.S. Bank, N.A. providing, among other things, Trustee Carveout (as defined therein) of $375,000). Because indemnification coverage is speculative at best, Insuring Agreement (B)(1) coverage provisions do not give the Debtors a property interest in the proceeds of the USSIC Policy. *See Downey*, 428 B.R. at 606 ("[N]o indemnification *for which the Debtor would be entitled to coverage under the Policy* has occurred. Unless the Debtor would be entitled to coverage under the Policy, indemnification would not 'adversely affect the Debtor's estate,' because such indemnification would not deplete the Policy proceeds.")[10]

18.  Finally, the Directors and/or Officers are not aware of any pending Securities Claims against the Debtors that would trigger coverage under Insuring Agreement (B)(2), and, furthermore, any such claims would be stayed by section 362(a) of the Bankruptcy Code and subject to subordination under section 510(b) of the Bankruptcy Code. Thus, Insuring Agreement (B)(2) proceeds, even if not contractually subordinated to Insuring Agreement (A) proceeds, are not necessary to protect the assets of the estate from diminution and are not property of the estates. *See Downey*, 428 B.R. 604 n.36 ("Where a liability insurance policy

---

[10] There is an additional reason why the Debtors' potential coverage under Insuring Agreement (B)(1) should not preclude the Directors and/or Officers from obtaining coverage under Insuring Agreement (A): if the Debtors were to satisfy their obligations of advancement and indemnification to the Directors and/or Officers, the Directors and/or Officers presumably would no longer have any need for coverage from USSIC under Insuring Agreement (A). In that situation, USSIC would still be paying the Directors' and/or Officers' losses, except it would be doing so indirectly through Insuring Agreement (B)(1) rather than directly through Insuring Agreement (A).

includes entity coverage, but there are no covered Securities Claims outstanding, courts have generally held that the insurance proceeds are not property of the estate.").

19. Notwithstanding the foregoing, and just like proceeds available under Insuring Agreement (B)(1), the USSIC Policy's Order of Payments Endorsement unambiguously subordinates the Debtors' right to payment under Insuring Agreement (B)(2) to the Directors' and/or Officers' right to payment under Insuring Agreement (A). Thus, to the extent the Debtors could ever incur future Loss under Insuring Agreement (B), they would have only a contingent right to proceeds, limited to the extent the non-indemnified Loss incurred by the Directors and/or Officers under Insuring Agreement (A) did not exceed the Policy's Limit of Liability. *See, e.g., World Health Alternatives*, 369 B.R. at 811 (finding that there was not a reasonable probability that trustee would succeed on the merits of claim that policy proceeds were assets of the estate for reasons including that a priority of payments provision required that payments to directors and officers be made first). Accordingly, if the policy proceeds were deemed property of estates, then the Debtors would be granted greater rights in the policy proceeds than it would have had outside of bankruptcy, contrary to established principles of bankruptcy law. *See Downey*, 428 B.R. at 608.

20. For these reasons, the USSIC Policy proceeds are not property of the Debtors' estates, and thus, not subject to the automatic stay.

**B.    The Court Should, in the Alternative, Grant Relief from the Automatic Stay**

21. Even if the proceeds of the USSIC Policy are subject to the automatic stay, the Court should grant relief from the stay so that the Directors and/or Officers can access the policy proceeds to pay for their defense costs and other covered Losses. *See Downey*, 428 B.R. at 608 (holding in the alternative that, even if the policy proceeds were property of the estate, cause existed to lift the automatic stay). Courts in this and other districts have routinely granted such

11

relief. *See, e.g., In re MF Global Holdings Ltd.*, 469 B.R. 177, 192 ("Courts in this Circuit and other jurisdictions have permitted the advancement of defense costs to a debtor's directors or officers even though the insurance policies provide direct coverage to the debtor."); *In re Enron Corp.*, No. 01–16034, 2002 WL 1008240, at *2 (Bankr. S.D.N.Y. May 17, 2002) (granting relief from stay, to the extent applicable, for payment of defense costs); *In re CyberMedica, Inc.*, 280 B.R. 12, 18–19 (Bankr. D. Mass. 2002) (granting relief from stay for cause because directors and officers would suffer irreparable harm if prevented from exercising their rights to defense payments under directors and officers insurance policy); *In re Laminate Kingdom, LLC*, No. 07-10279, 2008 WL 1766637, at *4 (Bankr. S.D. Fla. Mar. 13, 2008) ("Because of the separate and distinct interests between the directors and officers and the debtor, numerous courts have granted relief from the automatic stay to permit the advancement of defense costs to a debtor's directors and officers – even though the insurance policies also provided direct coverage to debtor.").

22. Section 362(d)(1) of the Bankruptcy Code authorizes the Court to grant relief from the stay "for cause, including the lack of adequate protection of an interest in property of such property in interest[.]" 11 U.S.C. § 362(d)(1). In considering whether to grant relief from the stay under this provision, the Court should consider (1) "[w]hether any great prejudice to either the bankrupt estate or the debtor will result from a lifting of the stay" and (2) "[w]hether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor." *Downey*, 428 B.R. at 609.[11] As described below, these factors strongly weigh in favor of lifting the automatic stay.

---

[11] In *Downey*, the court also referenced "[t]he probability of the creditor prevailing on the merits" as a factor in determining whether relief from the automatic stay was appropriate. *Downey*, 428 B.R. at 609. The Directors and/or Officers submit that this factor does not apply here. If they were seeking stay relief to pursue litigation against the Debtors, the merits of that litigation would be relevant to whether the automatic stay should be lifted. *See, e.g., In re Continental Airlines*, 152 B.R. 420, 424 (Bankr. D. Del. 1993). But, the Directors and/or Officers do not seek to pursue litigation against the Debtors. The relief that the Directors and/or Officers seek – access to the

12

23.     First, there would not be any prejudice to the Debtors or their estates from lifting the stay to allow USSIC to pay their coverage obligations to the Directors and/or Officers. Even if the Debtors' estates are deemed to have an interest in proceeds of the USSIC Policy, that interest would not be impaired by lifting the automatic stay because the Debtors' interest is subordinated to that of the Directors and/or Officers. *See Laminate Kingdom*, 2008 WL 1766637, at *3 ("[T]he estate has only a contingent, residual interest in the Policy's proceeds; and, payment of the proceeds in accordance with the 'Priority of Payments Endorsement' does not diminish the protection the Policy affords the estate, as such protection is only available after the [directors' and officers'] Costs of Defense are paid."). Stated simply, the Debtors would not be prejudiced by being held to the terms of its contract. *See, e.g., In re Continental Airlines, Inc.*, 134 B.R. 536, 541 (Bankr. D. Del. 1991) ("To the extent that such an interest is limited in the hands of the debtor, it is equally limited in the hands of the estate.") (internal quotation marks and citations omitted).

24.     Second, absent stay relief, the Directors and/or Officers may suffer substantial and potentially irreparable harm. Without the USSIC Policy proceeds, the Directors and/or Officers would be denied resources to pay their attorney's fees and other defense costs in the Lawsuit, thereby undermining their ability to present an effective defense. The Directors and/or Officers thus "may suffer substantial and irreparable harm if prevented from exercising their rights to defense payments." *Downey*, 428 B.R. at 610 (*quoting CyberMedica*, 280 B.R. at 18); *Allied Digital Techs.*, 306 B.R. at 514 ("Without funding, the Individual Defendants will be prevented from conducting a meaningful defense to the [plaintiff's] claims and may suffer substantial and irreparable harm.").

---

proceeds of the USSIC Policy – is not contingent on the merits of any litigation claim, but instead flows from the plain and unambiguous terms of the policy.

25. In short, the balance of equities is not a close question here and weighs heavily in favor of the Directors and/or Officers. Absent stay relief, the Directors and/or Officers may face significant and potentially irreparable harm, as they would be deprived of needed funds to which they are unambiguously entitled to fund their defense of the Lawsuit. For the foregoing reasons, the Directors and/or Officers respectfully request that the Court modify the automatic stay, to the extent applicable, to allow USSIC to advance and/or reimburse the defense costs and other losses pursuant to the terms of the USSIC Policy.

## WAIVER OF BANKRUPTCY RULE 4001(a)(3)

26. Bankruptcy Rule 4001(a)(3) provides that "[a]n order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 4001(a)(3). The Directors and/or Officers request that any order granting this Motion and modifying the automatic stay, to the extent applicable, be effective immediately.

## NOTICE

27. Notice of this Motion has been given to: (i) counsel to the chapter 7 trustee; (ii) counsel to the Debtors; (iii) counsel to USSIC; (iv) the Office of the United States Trustee for the District of Delaware; and (v) all parties who have requested to receive notice in these cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Directors and/or Officers submit that no other or further notice is necessary.

28. No prior motion for the relief sought herein has been made by the Directors and/or Officers in this or any other Court.

WHEREFORE, for the reasons stated above, the Directors and/or Officers respectfully request the Court enter the Proposed Order and grant such other and further relief as is just and proper.

Dated: November 9, 2018
       Wilmington, Delaware

/s/ Marcos A. Ramos
Marcos A. Ramos (No. 4450)
Brett M. Haywood (No. 6166)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

*Counsel for the Directors and/or Officers*